UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GLEN HOOPS,                             ) | |
|                Plaintiff,                ) | |
| v.                                      ) | Case No. 4:20-CV-1712-SPM |
| AUTO OWNERS INSURANCE CO.,              ) | |
| et al.                                  ) | |
|                Defendants.              ) | |

## MEMORANDUM AND ORDER

Plaintiff Glen Hoops brought this action for uninsured motorist insurance coverage after sustaining serious, permanent, and progressive bodily injuries following an accident in a car covered by a policy issued by Defendant Auto Owners Insurance Company. Plaintiff alleges his injuries are covered by the uninsured motorist provisions of the policy because the accident was caused by an unknown "phantom driver." Plaintiff's Complaint alleges that, in addition to insurance proceeds under the policy, he is entitled to additional damages because of Auto Owners' vexatious refusal to pay. Auto Owners disputes that there was ever a "phantom driver" and has moved for partial summary judgment on Plaintiff's claim for vexatious refusal.[1]  (Doc. 53).

---

[1] Auto Owners initially also sought partial summary judgment on grounds that, contrary to settled law, Plaintiff appeared to contend that he was entitled to "stack" the uninsured motorist coverage. The Court agrees that the law clearly prohibits stacking for the reasons articulated by

The Court has carefully considered the supported material relevant undisputed facts, the arguments of counsel, and controlling and instructive case law. For the reasons set forth more fully below, the Court will grant Defendant's motion.

I. **FACTUAL BACKGROUND**[2]

On or about February 1, 2019, Plaintiff Glen Hoops ("Plaintiff") was involved in an automobile accident on Highway 44 while driving a 2016 Peterbilt 337 with a vehicle identification number (VIN) ending in -30712 ("Plaintiff's vehicle"). Plaintiff alleges that the accident was caused by an unidentified tractor-trailer (the "phantom vehicle") that merged toward Plaintiff's vehicle as Plaintiff was attempting to pass the phantom vehicle. This caused Plaintiff to lose control of his vehicle. A highway patrol report was made by Trooper Cordel Gibson shortly after the accident, which included a statement from Jeffrey Cornelius, an eyewitness to at least a portion of the accident on February 1, 2019. In the report, Mr. Cornelius told Trooper Gibson that he "came around the corner and [Plaintiff] was already off road. [Plaintiff] then spun around a couple of times but [Mr. Cornelius] didn't see what happened before that." *See* Def. Ex. B. (Doc. 55-3). As a result of this accident,

---

Auto Owners. Indeed, during a case status conference on August 15, 2022, Plaintiff's counsel acknowledged as much and indicated on the record that Plaintiff was abandoning any claim that he was entitled to stack the uninsured motorist coverage. As such, this Memorandum Opinion and Order does not address Auto Owners' stacking argument.

[2]   Except as otherwise noted, these facts are taken from the parties' respective statements of undisputed facts.

Plaintiff was unable to speak for approximately two weeks because he was in a coma and required a tracheostomy.

At the time of the accident, Plaintiff's vehicle was covered by a commercial auto insurance company issued by Auto Owners to Plaintiff's employer, Gammon Trucking, Inc. ("the policy"). The policy's declarations page shows the limit of liability for uninsured motorist ("UM") coverage is $1,000,000 for each person and designates Gammon Trucking, Inc. as the named insured. Under the terms of the policy, Plaintiff qualifies as an "insured" because he was occupying the subject vehicle at the time of the accident. (Doc. 54 at 7).[3]

In September 2020, Plaintiff's attorney sent a letter notifying Auto Owners that Plaintiff was making a claim under the uninsured motorist provisions. On November 6, 2020, Plaintiff filed suit in the Circuit Court for Franklin County, Missouri.[4]  Defendant removed the action to this Court on December 3, 2020. (Docs. 1, 23).

On March 8, 2021, the parties took the deposition of Jeffrey Cornelius. *See* Deft. Stmt. Of Undisp. Facts, ¶ 10 & Deft. Ex. D (Doc. 55-5). Mr. Cornelius testified that he was heading westbound, Plaintiff was heading eastbound, and that when he

---

[3]     Because Defendant's memorandum in support of its motion for partial summary judgment (Doc. 54) does not contain numbered pages, citations to the memorandum are made in accordance with the pagination assigned by the Court's electronic filing system (CM/ECF).

[4]     Plaintiff also named Geico Casualty Company ("Geico") as a named Defendant, but Geico was dismissed on May 11, 2021. (Doc. 24).

first saw Plaintiff's vehicle, it was under control. Deft. Ex. D at 22, 25.[5] He also testified that just before Plaintiff's vehicle left the roadway, there was another vehicle on the same side of the roadway as Plaintiff as well as some more vehicles coming around the corner behind Plaintiff. *Id.* at 26-27. This first vehicle was ahead of Plaintiff in the eastbound lane and located about a quarter mile ahead of Plaintiff. *Id.* at 28. The other vehicles were about two-tenths to four-tenths of a mile behind Plaintiff. *Id.* at 27. Mr. Cornelius testified that he had a clear line of sight and that there were no vehicles next to Plaintiff's vehicle. *Id.* at 28, 29-30. However, Mr. Cornelius admitted that the curve in the road would have limited his ability to see the area where Plaintiff was until he reached the end of the curve. *Id.* at 36. After seeing Plaintiff go off the road, Mr. Cornelius pulled over and called 911. *Id.* at 30. While on the phone with the operator, Mr. Cornelius asked Plaintiff what his name was and if there was anything hazardous in the vehicle. *Id.* at 31-32. Plaintiff did not inform Mr. Cornelius how the accident occurred or if another vehicle was involved, but Mr. Cornelius also testified that he never asked Plaintiff what happened or what caused him to go off the road. *Id.* at 32, 38. Mr. Cornelius testified that, had he seen any other vehicles involved in the accident, he would have told that to the officers on scene. *Id.* at 33. When asked about his statement given to Trooper Gibson, Mr. Cornelius indicated the statement did not seem exact but an approximation of what

---

[5] For ease of reference, citations to Deft. Ex. D are made in accordance with the pagination of the deposition transcript.

4

he said. *Id.* at 37-38.

On April 20, 2021, the parties took the deposition of Cordel Gibson, the Missouri State Trooper who reported to the scene of the accident on February 1, 2019. *See* Deft. Ex. B (Doc. 55-3). Trooper Gibson testified that he was unable to speak with Plaintiff but took the statement of eyewitness, Jeffrey Cornelius. *See id.* at 13,[6] Deft. Stmt. Of Undisp. Facts, ¶ 8. Trooper Gibson indicated that Mr. Cornelius' statement in the report is exactly what was reported to him by Mr. Cornelius. Deft. Ex. B at 14. The officer testified that he did not think Mr. Cornelius saw Plaintiff's vehicle leave the roadway or he would have asked Mr. Cornelius more questions at the scene. *Id.* at 15. Trooper Gibson stated from what he gathered was that Mr. Cornelius saw the back end of the accident but did not see what caused Plaintiff to leave the road. *Id.* at 16. The officer also testified that this crash did not meet the criteria for making a reconstruction of the accident, and no actual reconstruction was performed. *Id.* at 19-20. Trooper Gibson did diagram the measurements of the accident, with various reference points and distances. *Id.* at 21. The report did not include any skid marks and he did not see any tire marks on the roadway. *Id.* Trooper Gibson further testified that, after investigating the scene, he concluded that Plaintiff lost control of the vehicle he was driving when he overcorrected after drifting off the right side of the shoulder and made no mention

---

[6] For ease of reference, citations to Deft. Ex. B are made in accordance with the pagination of the transcript.

in his report of any tractor trailer or any vehicle other than the one occupied by Plaintiff. *Id.* at 22-24; Deft. Stmt. Of Undisp. Facts, ¶¶ 8-9. Trooper Gibson also testified that neither Plaintiff nor anyone else on Plaintiff's behalf has ever contacted him with any information about another vehicle being involved in the accident. Deft. Ex. B at 24.

On February 23, 2022, the parties took the deposition of Plaintiff's retained expert, Sharron Hughes. Plt. Ex. 13 (Doc. 62-13). Ms. Hughes is a nurse and certified case manager. *Id.* at 6-7, 47. She is employed by England & Company as the President of Case Management and Vice President of Rehabilitation. *Id.* at 6, 10. Ms. Hughes routinely works as a case manager for injured workers. *Id.* at 6-7. Before being retained as an expert in this case, Ms. Hughes worked as the case manager for Plaintiff's workers' compensation claim. *Id.* at 7. She was paid for her case management services by Auto Owners. *Id.* at 8. Ms. Hughes testified that she became involved in Plaintiff's case very shortly after his accident. *Id.* at 8-9. She testified that she has no independent knowledge of the cause of Plaintiff's accident and only knows what Plaintiff tells her, which is that he was run off the road. *Id.* at 49. Ms. Hughes testified that she did not do any investigation into the cause of Plaintiff's accident and further testified that Plaintiff does not "have a lot of memory of the event[.]" *Id.* She also stated that she thinks Plaintiff wants doctors to know he was a good truck driver and that he was careful. *Id.* at 50.

The parties also took the deposition of Plaintiff's father, brother, stepmother, sister, and brother-in-law. Plt. Exs. 15, 16, 17, 18, 19 (Docs. 62-15 to 62-19). Each family member testified that, at some time after leaving the intensive care unit, Plaintiff told them he was run off the road by another vehicle.

In letters sent to Defendant's counsel on September 14, 2021; September 21, 2021; February 15, 2022; February 23, 2022; March 3, 2022; and April 18, 2022, Plaintiff, via his attorney, demanded that Auto Owners pay the policy limit of $1,000,000.

## II.   LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Accord, e.g., Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012). A dispute about a material fact is genuine, making summary judgment inappropriate, when "a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "In ruling on a summary judgment motion, a court must view the facts in the light most favorable to the non-moving party." *Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018). "In reaching its decision, a court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Id.* (internal quotation marks omitted).

Because this is a diversity case, the Court applies state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Plaintiff's claim is based on Missouri contracts and the negligence of an uninsured motorist that caused an accident in Missouri. *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012) ("State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship.") The parties appear to agree that Missouri law controls.

### III. DISCUSSION

Plaintiff claims that, among other things, Defendant's refusal to respond to his demands for the policy limits entitles him to recover under Missouri's "Vexatious Refusal" to pay statute, Mo. Rev. Stat. § 375.420, because Defendant has refused to pay without reasonable cause or excuse.

8

The statute itself states that

> if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee[.]

§ 375.420 RSMo.

To establish a claim for vexatious refusal to pay, Plaintiff must prove: (1) the existence of an insurance policy; (2) that Defendant refused to pay; and (3) that Defendant's refusal to pay was without reasonable cause or excuse. *Macheca Transp. v. Philadelphia Indem. Ins. Co.*, 649 F.3d 661, 674 (8th Cir. 2011) (citing *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006)). "To recover penalties for vexatious refusal to pay, an insured must prove that the refusal was willful and without reasonable cause." *Purcell v. Allied Prop. & Cas. Ins. Co.*, No. 1:12-CV-050-SNLJ, 2014 WL 12781223, at *2 (E.D. Mo. Mar. 12, 2014) (unreported) (quoting *State of Mo. ex rel. Pemiscot Cnty., Mo. v. W. Sur. Co.*, 51 F.3d 170, 174 (8th Cir. 1995)).

Under Missouri law, the "test for a vexatious refusal claim is not the final resolution of the coverage issues but how willful and unreasonable the insurer's refusal was as the facts appeared to a reasonable and prudent person *at the time the insurer was asked for coverage*[ ]" *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 387 (Mo. App. 1999)) (quoting Wood v. Safeco Ins. Co. of

9

Am., 980 S.W.2d 43, 55 (Mo. App. 1998)) (emphasis added). Although "[t]he existence of a litigable issue, either factual or legal, does not preclude a vexatious penalty where there is evidence the insurer's attitude was vexatious and recalcitrant," *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (1984), there is no vexatious refusal when the insurer has reasonable cause to believe and does believe there is no liability under its policy and that it has a meritorious defense. *Macheca*, 649 F.3d at 674 (citing *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 55 (Mo. Ct. App. 1998)). Indeed, the Eighth Circuit has recognized that, under Missouri law, an insurer may insist upon a judicial determination of open questions of law or fact without being penalized. *Macheca*, 649 F.3d at 674 (citing *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 109 (Mo. Ct. App. 2004)). *See Groves v. State Farm Mut. Auto. Ins. Co.,* 540 S.W.2d 39, 42 (Mo. 1976) (en banc) (holding defendant's vexatious refusal to pay plaintiff's claim should not have been submitted to the jurybecause "[t]here was evidence indicating that there was a question of fact about which there could be an honest difference of opinion as to whether plaintiff's damage was caused by the vandalism claimed by plaintiff").

In this case, it is undisputed that there is no uninsured motorist coverage if there was no phantom driver. As the foregoing factual findings demonstrate, whether there was or was not a phantom driver is an open question of fact. Specifically, the factual findings demonstrate that, shortly after the accident, Plaintiff told his workers

10

compensation case manager, Nurse Hughes, that he had been run off the road. However, Nurse Hughes testified that Plaintiff did not "have a lot of memory" about the event. This testimony rings true given the nature and severity of Plaintiff's injuries. Nurse Hughes's testimony that she believes Plaintiff wanted his doctors to know he was a good truck driver and that he was careful, also calls into question whether his memory of the accident was more a product of what he wished rather than what, in fact, occurred. Testimony by Plaintiff's family members that he told them he was run off the road lends support to Plaintiff's claim of a phantom driver; however, the weight and credibility of that testimony is also subject to be challenged by Auto Owners on grounds such as bias, hearsay, or reliability.

Plaintiff's claim of a phantom driver claim is more directly challenged by the testimony of the responding police officer and eyewitness. Trooper Gibson's testimony suggests that, based on his interview of the eyewitness and investigation of the scene, there was no evidence of another "phantom vehicle" as claimed by Plaintiff. Instead, Trooper Gibson's testimony suggests the accident was the result of Plaintiff's overcorrection after drifting off the right side of the shoulder. Similarly, when he was first questioned during his deposition, eyewitness Jeffrey Cornelius testified he did not observe any other vehicle driving alongside Plaintiff's vehicle at or near the time of the accident, thereby suggesting there was no "phantom vehicle." Although both witnesses arguably provided somewhat conflicting testimony, the

11

evidence before this Court indicates there is a question of fact about which "there could be an honest difference of opinion" as to whether Plaintiff's damage was or was not caused by an uninsured motorist. *See Groves,* 540 S.W.2d at 42.

In sum, based on the record before this Court, Auto Owners reasonably believes it has a meritorious defense to uninsured motorist insurance coverage and is entitled to demand a judicial determination of its liability under the policy. Under the circumstances presented in this case, Auto Owners' refusal to pay, as a matter of law, is not vexatious within the meaning of the statute. *See Cedar Hill Hardware & Constr. Supply v. Ins. Corp. of Hannover*, 563 F.3d 329, 344 (8th Cir. 2009) ("[I]f the case is one where the information in the company's possession at the time it is called upon to pay is such as to raise a fair doubt about its liability, then it is not to be charged with bad faith in demanding a judicial determination of the matter, and in such a situation its refusal to pay is not vexatious within the meaning of the statute.") (citation omitted).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc 53) is **GRANTED**.

/s/ Shirley Padmore Mensah
───────────────────────────
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of September, 2022.